ENOCH BARKELEW and others *v.* JOSEPH M. TAYLOR and
CHRISTIAN I. WALKER.

A purchaser of land at sheriff's sale under an agreement with the defendant in exe-
cution to buy it and advance the money for his accommodation and relief, and to
permit him to redeem, which agreement was made known to the sheriff and the
persons attending the sale, and in consequence of which the property was struck off
to the purchaser greatly below its value, was adjudged to hold it only as in mort-
gage.

The bill, filed March 23d, 1846, states, that, on or before
September 23d, 1836, Peter W. Barkelew was seized and pos-
sessed of certain lots, tracts and parcels of land described in the
bill, the whole of said lands being of the value of $3,120.

That on said 23d of September, 1836, Samuel Whitehead ob-
tained a judgment against said Peter W. Barkelew, for $900,
on which judgment an execution was issued and delivered to the
then sheriff of Middlesex, and levied upon all the said tracts of
land, and the said sheriff advertised the same to be sold, at the
village of Washington, on the 5th of August, 1839.

That on the said 5th of August, the said Peter W. Barkelew
found himself much embarrassed by having his said property ad-
vertised for sale, and was unable to raise the money to pay the
said judgment. That Joseph M. Taylor then proposed to be a
friend of said Peter W. Barkelew, and offered to aid him in his
difficulties, and proposed to him to let the whole of said property
be sold by said sheriff and be struck off and sold to him the said
Taylor for the amount due on the said judgment or thereabouts ;
and that he the said Taylor would pay the then indebtedness of
him the said Peter W. Barkelew and relieve him from his em-
barrassments ; and that afterwards, when he the said Peter W.
Barkelew should be able to raise the money, he might pay back
the amount which had been thus paid by the said Taylor, to-
gether with some reasonable compensation for his services, and
that said Taylor would then reconvey the said lands to the said
Peter W. Barkelew ; it being then understood by said Peter W

Barkelew and said Taylor that the said lands were worth some $2,000 more than the amount of incumbrance on them.

That the said Peter W. Barkelew, having entire confidence in said Taylor, and believing that said Taylor really intended to befriend him, accepted the said proposal, and consented that the whole of said lands should be struck off and sold by the said sheriff to the said Taylor for the amount due on the said judgment, upon the terms and conditions proposed by the said Taylor as aforesaid; and that the said sheriff was informed of such arrangement when he offered the said lands for sale as hereinafter stated.

That a number of persons attended the said sale for the purpose of purchasing said lands or some part thereof, and were ready and willing to pay a full price for the same; but that the persons so intending to purchase were informed, at the time of said sale, by the said Taylor and the said Peter W. Barkelew, that the foregoing arrangement had been entered into between the said Taylor and the said Peter W. Barkelew, and that the said Taylor was going to purchase the said lands for him the said Peter W. Barkelew for the amount of the said judgment, and that the same were to be reconveyed to the said Peter W. Barkelew upon his repayment of the money aforesaid. That the persons so in attendance and desiring to purchase as aforesaid, on being thus informed, declined to make any bid on the property whatever, and the whole of the said lands were permitted to be sold by the said sheriff and purchased by the said Taylor for $1,260; and that a deed was accordingly made by the said sheriff to the said Taylor and one Christian J. Walker, who, for some cause unknown to the complainants, is joined with the said Taylor as a grantee in the said deed.

That within a year after the said sale, the said Peter W. Barkelew procured the amount of money, with interest, which had been paid by said Taylor for the said Peter W. Barkelew for the purchase of said lands as aforesaid, and tendered the same, together with a reasonable sum as a compensation for his services, to the said Taylor, and requested him to reconvey to the said Peter W. Barkelew the said lands, according to the said agreement; but the said Taylor refused so to do, and has ever

since refused; and that the said Taylor and Walker have, since the said tender, sold and disposed of all or nearly all of the said lands, for large sums of money, but for what particular amounts the complainants are not informed; the whole of which moneys, together with the use and profits of the said lands, the said Taylor and Walker have appropriated to their own use and benefit.

That the said Peter W. Barkelew died on or about August 20th, 1845, without having in any way settled the said matter with the said Taylor.

That said Peter W. Barkelew died intestate and without issue, leaving the first named complainants his heirs-at-law; and that the last named complainant has been duly appointed administrator &c. of the said Peter W. Barkelew.

The bill prays, that the said Taylor and Walker may be decreed to reconvey or cause to be reconveyed to the complainants the said heirs-at-law the said lands upon being repaid the money by them or either of them paid and advanced as aforesaid for the said Peter W. Barkelew, together with a reasonable sum for their or either of their services in the premises; or if it shall seem more equitable, that the said Taylor and Walker, or one of them, may be decreed to pay to the complainant the said administrator, to be distributed according to law, all the moneys for which the said Taylor and Walker, or either of them, have or has sold the said lands, after deducting the moneys paid as aforesaid by said Taylor and Walker, or either of them, for the said Peter W. Barkelew, together with a reasonable compensation for his or their services in the premises; and for such other and further relief &c.

The defendants put in their joint and several answer:

That as to so much of the bill as seeks to compel them specifically to perform the agreement in said bill mentioned for a reconveyance to said Peter W. Barkeley by the defendant Taylor; or seeks to compel these defendants to reconvey said lands to the complainants pursuant to any such agreement; or seeks any other relief as relating to said lands; or seeks any discovery from these defendants of or concerning any agreement al-

leged to have been made between the said Peter W. Barkelew and the defendant Taylor for a reconveyance by said defendants to the complainants of said lands, these defendants do plead in bar, and for a plea say, that by the act entitled "An act for the prevention of frauds and perjuries," passed November 11th, 1764, it was, among other things, enacted: That no action should be brought whereby to charge any person upon any contract or sale of lands, &c., or any interest in or concerning the same, unless the agreement upon which such action should be brought, or some memorandum or note thereof should be in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her legally authorized. And these defendants for a plea further say, that neither they the defendants, nor any person by them lawfully authorized, did ever sign any contract or agreement in writing for making or executing any sale or reconveyance to the said Peter W. Barkelew or to the complainants of the said lands or any part thereof or any interest therein, or to any such effect, or any memorandum or note in writing of any such agreement.

And in aid and support of the said plea, for answer to the residue of the bill, they admit the seizure and possession of said Peter W. Barkelew, and the judgment and execution, and advertisement for sale stated in the bill. And the said Taylor, answering for himself, admits, that at the time of said sale the said Peter W. Barkelew was so much embarrassed as to be unable to raise the money to pay the said judgment, but he denies that he ever offered to aid the said Peter W. Barkelew in his difficulties, or ever proposed to him to let the whole of said property be exposed to sale and struck off to him the said Taylor for the amount due on the said judgment, nor did he ever promise to pay the then indebtedness of the said Peter W. Barkelew to relieve him from his embarrassments, or agree with said Peter W. Barkelew that afterwards, when he the said Peter W. Barkelew should be able to raise the purchase money so paid for the said premises, that upon paying the amount of the purchase money laid out by this defendant for the said premises and some reasonable compensation for his services, that thereupon he the said Taylor would reconvey the said lands to the

said Peter W. Barkelew. And this defendant further denies that there ever existed any understanding between him and the said Peter W. Barkelew that the said lands were worth some $2,000 more than the incumbrance upon them. But this defendant alleges the truth to be, and the defendant Walker believes such allegation to be true, that, some time previous to the said sale, he had a conversation with the said Peter W. Barkelew, and stated to him that he understood that some difficulty existed as to the title of said property, but still he was willing to bid it up as high at sheriff's sale as $1,500; but, after having bought the same, if it should be struck off to him for that sum, he would assist him the said Peter W. Barkelew, if he was in want of money; and this defendant avers that he did from time to time give the said Peter W. Barkelew small sums to relieve his immediate necessities; but never from any idea that he was legally or equitably bound to pay him any moneys whatever.

And this defendant further denies, and the defendant Walker believes such denial to be true, that any such proposal as above mentioned was ever accepted by the said Peter W. Barkelew, or that the said sheriff was ever informed of any such arrangement as above mentioned at the time the said property was offered at sheriff's sale as aforesaid.

And the defendants deny that in consequence of any such arrangement as above set forth the persons who attended the said sale declined to make any bids, they being informed that the aforesaid arrangements had been entered into by the said Taylor and Peter W. Barkelew. But they allege that the persons who attended said sale came there for the purpose of bidding for the said property, and did actually bid for the same; and that, these defendants being the highest bidders, the property was struck off to them, for the sum of $1,260; and a deed was accordingly made to these defendants, by the said sheriff, of the lands so purchased.

And the defendant Taylor denies, and the defendant Walker believes such denial to be true, that the said Peter W. Barkelew, within a year after the sale, or at any period during his life, offered or tendered to him the said Taylor the money expended in the purchase of the said lands, together with reasonable compen-

sation for his services, or that the said Peter W. Barkelew ever requested him the said Taylor to reconvey to the said Peter W. Barkelew the said lands.

And these defendants admit, that, since the said sale, they have sold and disposed of a considerable quantity of the said lands, for a valuable consideration; and that most of the property so sold by them was sold during the lifetime, and, as they believe, with the full knowledge of the said Peter W. Barkelew, he neither interposing or attempting to interpose any objection to the sale of the same.

A replication was filed; and depositions were taken on the part of the complainants, only.

*John Culver*, sworn for the complainants, testified that he was present at the sale. That he was acquainted with the lots advertised to be sold. He went to the sale with a view of purchasing a wood lot, of about 40 acres, if it were sold for a reasonable price. He was willing to give $25 an acre for it; he thought it would be cheap at that, and would probably have given a little more. The defendant Taylor asked witness what the wood lot was worth, and witness told him he would like to have it at $25 an acre. Witness did not bid on this lot, or any other. The reason was, that Taylor wanted him to go to Peter W. Barkelew and get him to agree to put up all the property at once; and said that he, Taylor, would bid it off and let him, Peter W. Barkelew, have a year or more to redeem it. Witness went to Peter W. Barkelew and told him what Taylor said. Peter W. Barkelew said he would rather have it in writing. Witness told Peter W. Barkelew that he thought Taylor's word as good as writing. Witness then went to Taylor and told him what had passed between witness and Peter W. Barkelew, and that witness thought that Peter W. Barkelew would be willing to have it sold without writing. Taylor said he wanted to have the property sold by the sheriff, rather than advance the money without a sale, because that would induce Peter W. Barkelew to stir himself and get the money. Witness and Peter W. Barkelew had several talks about it. Witness told him what Taylor

had said—that he wanted to befriend him—that others had cheated him and they should cheat him no longer. Peter W. Barkelew finally consented to and appeared to be satisfied with the arrangement. Taylor was to bid the whole property up to the amount of Whitehead's incumbrance and have it all struck off together to him. Witness would have bid had it not been for this arrangement, and the property had been put up in lots. Witness wanted the wood lot, but would not bid for it, if it had been put up seperately, after this arrangement had been made. The understanding between witness and Taylor was, that he was going to buy the property for the benefit of Peter W. Barkelew. Witness stayed until after the property was struck off. The sheriff was present when Taylor wanted me to tell Peter W. Barkelew about the matter, and when I came back. The sheriff understood the arrangement that had been made between Taylor and Peter W. Barkelew, that the whole property was to be put up together and struck off to Taylor. All the property was put up at once; there were four lots; and all struck off to Taylor. Besides Taylor, Whitehead bid a while, and then inquired of me what was going on. I told him the arrangement that had been made, and then he said he would bid no more than to the amount of his incumbrance. A year, it may be nearly two years afterwards, Peter W. Barkelew complained to me for having said that Taylor was a man of his word; that he had taken the money to Taylor to redeem the property and he refused to take it. When I saw Taylor I told him what Peter W. Barkelew had said, and asked him if Peter W. Barkelew had brought the money to him in time. Taylor said that he did, but that he had come with an armful of money, and that he, Taylor, would not count it, because he knew it was not Peter W. Barkelew's money; that he knew it was Manahan's money, and that they would only cheat him, Peter W. Barkelew, out of the property, and that he, Taylor, might as well have the property as they.

On *cross-examination* he says : Quite a good many persons attended the sale. I do not recollect that any person bid except Tay-

lor and Whitehead, though there might have been. Taylor and Peter W. Barkelew came together at the sale several times, both after and before the arrangement. I do not know that I heard any conversation between them. If I did I do not recollect it. There was no specified time in which the property was to be redeemed. Taylor told me to say to Peter W. Barkelew that he should have a year or more in which to redeem the property.

*Samuel Whitehead*, sworn for the complainants. Was present at the sale. Was acquainted with all the property; it was all set up together. I went to the sale with an understanding with Peter W. Barkelew that I was to purchase the whole property, and did not expect that any one would bid against me. I bid to the amount of my incumbrance, and some one bid over me; I did not know who it was, and I bid again. There was another bid. I asked the sheriff who was bidding. He said it was a good man. I bid again; and then saw Joseph M. Taylor wink. I then went to Taylor and asked him if he was bidding. He said yes, that he was going to purchase it to give Peter W. Barkelew a chance. Well, said I, if it is a friendly act between you and him I have nothing to say only this—I have his note for $18 or $19, for the costs of getting the execution; if you will pay that, I will bid no more. Taylor nodded; said nothing. I understood him to agree to pay it. He did pay it afterwards. After the sale was over Taylor asked me if I wanted the whole of the money. I told him if he would let me go snacks with him if Barkelew did not live up to his contract with him, Taylor, my money might lay. Previous to this I had a conversation with the last witness, John Culver, who had told me what the arrangement between Taylor and Barkelew was. Taylor then told me he had a partner, C. J. Walker, one of the defendants, and if I would not let the money lay a little while he would get it out of the bank. I let it lay two or three months. Taylor never told me what the arrangement was; I had it from Culver, the same as he has now stated in his testimony. Either at that time or some other time, Taylor told me that Barkelew had been cheated a great deal and they should cheat him no more.

On *cross-examination :* I advised Barkelew and his friends that all the lots should be put up together. This was long before the sale, and under the understanding that I was to buy it.

*James Yates*, sworn for complainants. Was at the sale. Previous to the sale there had been an arrangement between Barkelew, James C. Stout and myself, that I should become the purchaser of the property, upon conditions. I am not positive it was all the property. By this arrangement Barkelew had the right of redeeming the property in two years. This arrangement fell through. On the day of sale, and before the sale took place, Barkelew and Taylor were outside the house together. Barkelew, as he came near where I was, said to me that he had made the same arrangement with Taylor that he had made with me. Taylor said nothing *pro* or *con. ;* he was within hearing distance ; he passed on by us ; can't say that he heard Barkelew's remark. I did not hear Taylor say any thing on the subject during the day. Before Barkelew told me of the arrangement with Taylor, I had determined to purchase the wood lot if it did not go too high ; this was my purpose in going to the sale, and I should not have gone but for this purpose. I supposed the wood lot at the time to be worth $20 or $25 an acre. If the wood lot had been set up alone and the payments had not been too hard, I would have given $25 an acre for it. I concluded, from what Barkelew said, that Taylor was about to befriend him, and that he would redeem the property, and I therefore did not bid.

*Cross-examined.* Tthere was nothing more than a verbal arrangement between Barkelew, Stout and myself. This was some months before the sale. Brrkelew applied to me to assist him. I consented provided Stout came in too. I saw Stout, and he agreed to it. The arrangement fell through in consequence of Stout being disappointed in getting money.

*David Yates*, sworn for complainants. I was present at the sale. I heard some conversation between Taylor and Barkelew at the sale. Taylor called Barkelew one side. I heard Taylor

say to him that he had better let the sale go on, and he Taylor would buy it in for him, Barkelew. Barkelew assented, and said " very well." Something was said between them as to the length of time Barkelew was to have to redeem the property. I did not hear the time that was mentioned; they talked rather low. I stayed until the property sold. There was very little bidding; only some few bids. I understood from Taylor and Brakelew's conversation and also from other's conversation that there was some certain time agreed upon between Taylor and Barkelew in which Barkelew had a right to redeem the property, but did not understand what that time was. There was a number of people in attendance on the sale.

*Vreeland Vandeventer,* sworn for the complainants. I was at the sale. There was a number of persons there. About half an hour before the sale I stepped out in the yard, where I saw Barkelew and several others. Barkelew was telling what Taylor had agreed to do. Some person said to him, if he wanted to have the property sold he had better have it sold in such lots as it lay in. He refused to do so, and said that from the offer Taylor had made he would have a chance to save his property. Some person, I think it was John Culver, said to Barkelew, that if Taylor was going to do as he said, he had better have a written agreement to that effect. Barkelew said he would trust Taylor without a written agreement. While we stood talking there, Taylor came out and asked Barkelew what he was going to do, whether he was going to let the sale go on as he had agreed to do. Barkelew said he was. Then Taylor said to him, if you want to save your property do as I tell you, and not put it up in lots; sell it all together. Taylor then said he had agreed to buy it in for Barkelew and give him a chance to redeem it. When the property was set up it was the general understanding that Taylor was buying it for Barkelew. I went there with a view of buying some of the property, if set up separately. I did not bid because the property was more than I was prepared to buy, and, besides, I understood that Barkelew was to be benefitted eventually. I desired to buy the house and

lot in the village of Washington; I thought it worth then $600, and would have given that price for it.

*Cross-examined.* The property was struck off at about $1100 or $1200.

*In chief.* I am acquainted with the two fields mentioned in the bill. One of them I think worth $50 an acre at the time of the sale; this field is on the road from New Brunswick to the old bridge; I have seen the other in passing, but have formed no opinion of its value.

*Cross-examined.* Every one had a chance to bid if they had been willing to exercise hard feelings towards Barkelew. It was the talk and understanding at the sale that Barkelew's friends would not bid against him.

*Hugh Manahan,* sworn for the complainants. I am the brother of William Manahan, one of the complainants. I was not present at the sale. Barkelew applied to me for money to redeem the property, after it had been purchased by Taylor. I let him have the money for that purpose. The amount was something like $1200 or $1300. He tendered it to Taylor in my presence. Taylor laughed at him. Barkelew said to him, Mr. Taylor, I have the money I owe you, and I want to pay you. Taylor smiled, and said something; he did not take the money. Barkelew said to Taylor that it was the money to redeem his land—that he wanted to get his land back again—that he had the whole of it, principal and interest. Taylor made no objection that there was not enough money; he would not look at it. He made no objection that it was not in time. Taylor made no objection to the kind of money.

*John R. Reid.* I was present at the sale; I came in about the time it was struck off. I was acquainted with the four lots advertised for sale. I intended to attend the sale with a view of purchasing part of the property. Word come to me that the property was going to be bought in for Barkelew, and this made

me dilatory about going. I had intended to buy the house and lot in Washington; I owned on three sides of it. I had calculated to give from $550 to $600 for it, and had provided the money to pay for it; it was a cash sale. Barkelew asked me $1100 for it. I had made up my mind to give $600 for it if it went as high as that. If I had not heard that Taylor intended to buy in the property for Barkelew, I should have attended the sale at the time and bid to that amount for the house and lot. In a conversation with Taylor some time afterwards, he told me that Barkelew had been cheated a great deal, and he did not intend he should be cheated any more, and he had bought the property for Barkelew, and meant to take care of it for him and do right by him. I am acquainted with the two fields mentioned in the bill; the one on the road from New Brunswick to Old Bridge—and the other on the road from Washington to Cranberry. The first was worth at the time of the sale $50 an acre; the other $45 an acre.

*Cross-examined.* The impression that Taylor was buying the property for Barkelew was not derived from the fact that Taylor had bought. There were several persons at the sale who would have given twice the price for it that Taylor did.

The cause was heard on the pleadings and evidence; it being agreed that both the plea and the case on the answer and evidence should be heard at the same time.

*J. Vandyke* for the complainants.

*P. D. Vroom* for the defendants. He cited 2 *Story's Eq.* sec. 753, 5, 6, 8, 9, 762, 4, 768.

THE CHANCELLOR. Upon the facts in evidence I am of opinion that the grantees in the sheriff's deed took the title to hold only as in mortgage; and that Peter W. Barkelew, since deceased, was entitled to redeem, and made the offer to redeem, and the tender of the money in time.

It will be referred to a Master to ascertain what parts of the property have been sold, aud for what prices, and what parts of it still remain in the grantees named in the sheriff's deed, &c., &c.

Order accordingly.